| | | |
|---|---|---|
| **CARL STURDIVANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v .** | ) | **ORDER** |
| | ) | |
| **KONE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the defendant's Motion for Summary Judgment (Doc. No. 57), the plaintiff's Response (Doc. No. 60), and the defendant's Reply (Doc. No. 62). For the reasons stated below, the Court will **GRANT** the defendant's motion.

## I.    BACKGROUND

Defendant KONE Inc. ("KONE") is an international corporation that specializes in selling, installing, servicing, and modernizing elevators, escalators, and automatic building doors. KONE typically assigns workers to be part of a two person crew, consisting of a mechanic and an apprentice or helper. The teams work in the field and are directly supervised by management officials. Plaintiff Carl Sturdivant is an African American male over the age of forty. He is a mechanic by trade, and was originally hired by KONE while an apprentice in February 2001. Throughout the duration of Sturdivant's employment with KONE, he worked in various geographical locations in both the Service Equipment Business ("SEB") and New Equipment Business ("NEB") sectors.

After being hired in February 2001 as a mechanical helper in Charlotte, Sturdivant was laid off in March 2001 because of lack of work. At this time, Sturdivant was a member of the

International Union of Elevator Constructors ("IUEC" or the "Union"). Between 2001 and 2004 Sturdivant worked for Otis Elevator Company and Wingfield Huntley Elevator Company. He also became certified as a mechanic. While working for Otis, the Union and Otis engaged in an arbitration regarding what was later determined by the arbitrator to be illegal employment practices. Sturdivant contends he tried to discuss his employer's illegal practices and an issue regarding his paycheck with a union representative, and that the union representative did not properly represent him in the matters. Therefore, Sturdivant voluntarily withdrew from the Union and has not rejoined the Union since this dispute. (Doc. No. 58-2 at 5).

KONE rehired Sturdivant in May of 2004 as an SEB Mechanic in Knoxville, Tennessee. Sturdivant was transferred to the NEB division in July of 2004. Then, KONE again laid him off in August of 2004 because of lack of work, but the company soon rehired him as an NEB Mechanic in Knoxville. He continued in this position for approximately one year.

In October of 2005, Sturdivant was transferred to the NEB division of KONE to work as a mechanic. He continued working in this capacity until September 26, 2007, when Sturdivant was terminated for insubordination. He was discharged after refusing to follow a supervisor's order to cover a group of elevator doors in plastic and responding to his supervisor that he did not "have time for that shit." (Doc. No. 58-4 at 5). Sturdivant contends that the termination was in retaliation for prior complaints he had made to his supervisor regarding racial discrimination. Sturdivant filed both an unfair labor practice charge with the National Labor Relations Board ("NLRB") and a grievance challenging his termination. The NLRB deferred the issue. (Doc. No. 58-2 at 29). The arbitrator found that Sturdivant was the victim of disparate treatment because KONE had merely issued an official reprimand to another employee who had verbally threatened a coworker, but it terminated Sturdivant for his insubordination. On September 2, 2008, the grievance was settled by an arbitrator

who ordered that Sturdivant be reinstated by KONE and paid full backpay and benefits, totaling close to $50,000. (Doc. No. 60-1 at 2).

Following his termination, Sturdivant also filed a Charge of Discrimination with the EEOC on November 27, 2007 in which he alleged that KONE had discharged him because of his race, his age, and his previous complaints of alleged unlawful discrimination. (Doc. No. 27-4 at 3). Sturdivant was not issued a Right to Sue Notice until March 25, 2009. (Doc. No. 27-4 at 4).

Pursuant to the arbitrator's decision, KONE reinstated Sturdivant on September 22, 2008, and assigned him to work as an NEB Mechanic in Atlanta. During this time, Sturdivant contends that he repeatedly requested to be transferred both to Charlotte and to the SEB division, and that such requests were denied. He contends that such requests were denied in retaliation for filing the EEOC charge. (Doc. No. 1 at ¶458). In January of 2009, Sturdivant was transferred back to Charlotte as part of the NEB unit.

After being transferred to Charlotte as a mechanic in the NEB division, Sturdivant was assigned to a project where he installed elevator equipment for a new business. KONE appointed Brett Lenig, a four-year apprentice, to serve as Sturdivant's helper. Lenig is a white male under the age of forty.

Sturdivant contends Lenig had "serious issues about race and color." (Doc. No. 58-2 at 13). Sturdivant alleges that following President Obama's inauguration, Lenig told him that "They got all these painters up there in Washington, D.C. because they're going to make the White House now the black house." (Doc. No. 58-2 at 14). Sturdivant also alleges that Lenig would make comments like, "My wife is Mexican" and "I'm not a prejudiced person, but I feel that blacks should do this or should do that." (Doc. No. 58-2 at 14).

On February 17, 2009, Sturdivant and Lenig were working on the eleventh floor of a construction site installing an elevator. Sturdivant contends that he was talking to Spanish speaking subcontractors regarding coordination efforts and used the phrase "dos momentos." Lenig then told Sturdivant that he was not using the phrase correctly. A verbal argument ensued, which quickly escalated into a physical altercation. Sturdivant and Lenig were physically separated and sent home from the construction site.

After interviewing Sturdivant, Lenig, and others who witnessed the fight, Randy Bunner (Charlotte KONE Branch Manager) and Jaune'se Tate-Mitchell (KONE Regional Human Resources Director) decided to terminate both Sturdivant and Lenig based on their involvement in the fight.

Sturdivant filed a Charge of Discrimination with the EEOC on March 12, 2009, which he amended on April 9, 2009. In his charge, he alleged that since he was rehired by KONE in September 2008, he was "subjected to a pattern of retaliation as [he] was forced to work out of town while white workers worked in the local area." (Doc. No. 27-4 at 2). He also contended that "a letter [was] placed in his personnel file citing fault and unconfirmed information, [he was] placed on a construction site by [himself] against company safety policy and [was] told to go home without pay for no reason." (Doc. No. 27-4 at 2). Sturdivant also claims that he "was assaulted by a younger white male on the job" and that his supervisor, Dan Nitz, provided bad references to potential employers. (Doc. No. 27-4 at 2). Sturdivant claims he "was told that [he] was terminated for having an altercation (fighting) on the job even though [he] did not initiate the altercation." (Doc. No. 27-4 at 2). Lastly, Sturdivant claims he was discriminated against because of his race and in retaliation for filing a previous EEOC charge. (Doc. No. 27-4 at 2). The EEOC issued Sturdivant a Notice of Right to Sue on April 21, 2009. (Doc. No. 27-4 at 5).

## II.    Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The pleadings of a pro se litigant should be construed liberally.  Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

In his complaint, Sturdivant states twenty-eight claims for relief, including allegations of race and age discrimination, defamation, retaliation, intentional and negligent infliction of emotional distress, and wrongful discharge in violation of public policy.

**A.     Claims Barred by the Statute of Limitations**

Sturdivant asserts that KONE violated 42 U.S.C. § 1981 by discriminating against him on the basis of race in July and August of 2005 when it did not promote him and ultimately discharged him from the SEB division in October 2005. He also alleges that KONE employees harassed him in the workplace because of his race. Sturdivant claims that after complaining to KONE management about this alleged racial discrimination, KONE retaliated by not considering him for another position, violating § 1981. The federal courts in North Carolina adopt the most closely analogous state statute of limitations for § 1981 claims, which is the three-year statute of limitations under either N.C.G.S. § 1-52(1) or § 1-52(2). See Lilly v. Harris-Teeter Supermarket, 545 F. Supp. 686, 704 (W.D.N.C. 1982); Chisholm v. U.S. Postal Service, 516 F. Supp. 810, 871 (W.D.N.C. 1980). Sturdivant filed his complaint on June 4, 2009. Therefore, it is clear that Sturdivant's First, Second, and Fifth claims, based on actions that occurred in 2005, are barred by the three-year statute of limitations.

Sturdivant asserts a claim for intentional infliction of emotional distress arising out of events that transpired in July, August, and October of 2005 between himself and KONE employees Roger Nayle and Dave Trimmer. Sturdivant does not provide specific factual details regarding these events, but rather alleges that the individuals created a hostile work environment and treated him in a discriminatory manner, which caused him emotional distress. (Doc. No. 1 at ¶ 134-45). He further alleges that his transfer on October 28, 2005, from the SEB division to the NEB division

caused him severe emotional distress. The specific incidents described by Sturdivant that relate to this claim did not occur within the three-year limitations period. Therefore, Sturdivant's Third claim does not survive summary judgment. See N.C. Gen. Stat. 1-52(5). See also Dickens v. Puryear, 45 N.C. App. 696, 263 S.E.2d 856 (1980) (holding that the general three-year statute of limitations codified in N.C. Gen. Stat § 1-52(5) applies to intentional infliction of emotional distress claims).

B. **Discrimination Claims**

Sturdivant alleges that KONE discriminated against him based on race and age when it refused to transfer him from the NEB section to the SEB section, did not assign him to jobs in Charlotte, terminated his employment in 2007. These allegations pertain to the Fourth, Seventh, Eleventh, Seventeenth, Eighteenth, and Twenty-First claims. In order to prevail on a disparate treatment claim based on race or age, a plaintiff may proceed by either the "pretext" or "mixed-motive" framework. See Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). Regardless of the framework used and whether the plaintiff puts forth direct or circumstantial evidence, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). While Sturdivant has not specifically argued whether the mixed-motive or pretext framework applies, the Court will consider both frameworks in light of his pro se status.

1. **Pretext Framework**

Under the McDonnell Douglas framework, Sturdivant's Title VII, § 1981, and ADEA claims will be analyzed under a single burden-shifting analysis. See Ligtner v. City of Wilmington, 545 F.3d 260, 263 n.* ("[T]he McDonnell Douglas framework applies to discrimination claims under Title VII, § 1981, and § 1983.") (citing Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004);

EEOC v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004) ("An ADEA claim may be established through . . . a 'pretext' framework identical to the McDonnell Douglas burden-shifting analysis used in Title VII cases.") (citing Hill, 354 F.3d at 284-85). Applying this framework, the plaintiff must first establish a prima facie case of employment discrimination by producing evidence to fulfill four criteria related to the employment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[1] If the plaintiff provides credible evidence of all four criteria, there is a presumption of discrimination. At the second step, the burden shifts to the defendant to provide some legitimate nondiscriminatory reason for its employment decision. Id. If the employer provides a nondiscriminatory reason for its decision, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is pretextual. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The defendant is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or later fails to raise a material factual dispute concerning the employer's non-discriminatory reason for the alleged discriminatory act. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

### a. Step One: Prima Facie Discrimination

To establish a prima facie case of discriminatory termination, Sturdivant must show "(1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly

---

[1] Sturdivant must satisfy the same elements to establish a prima facie case of racial discrimination under Title VII as he must under 42 U.S.C. § 1981. See Thompson v. Potomoac Electric Power, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

qualified applicants outside the protected class."  <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 485 (4th Cir. 2005).

As an African-American male, Sturdivant is a member of a protected group and therefore satisfies the first element.   However, he fails to produce sufficient evidence to establish a prima facie case for any of the remaining elements.

In his Fourth claim, Sturdivant alleges that he was subjected to racial discrimination in violation of § 1981 when KONE assigned him to a job in Florida in 2005.  He contends that white workers were assigned to Charlotte-area jobs, but that Sturdivant's supervisor would not assign him to a job in Charlotte after he requested to be placed there.  (Doc. No. 1 at ¶172).  He also alleges that he was denied the same pay scale as white workers throughout 2005 and 2006.  (Doc. No. 1 at ¶170). Apart from making these allegations in his complaint, Sturdivant provides no evidence that he indeed suffered an adverse employment action, that he was performing his duties at a satisfactory level at the time, or that the Charlotte positions were actually filled by similarly qualified applicants outside of his protected class.   An adverse employment action for discrimination cases is a "discriminatory act which 'adversely affect[s] the terms, conditions, or benefits' of the plaintiff's employment." <u>James v. Booz-Allen & Hamilton, Inc.</u>, 368 F.3d 371, 375 (4th Cir. 2004) (quoting <u>Von Gunten v. Maryland</u>, 243 F.3d 858, 865 (4th Cir. 2001)).   To the contrary, Sturdivant had previously been laid off twice by KONE because of lack of work.   Rather than terminate Sturdivant's employment for lack of work, he was transferred to a site where he could continue his employment.   In light of these previous terminations, a reasonable employee would not find an assignment to a steady project to be a materially adverse action.   Additionally, Sturdivant does not provide a single piece of evidence to support his claim that similarly qualified white applicants were assigned the Charlotte positions or that he was in fact denied the same pay scale as other employees.

Sturdivant has failed to produce evidence sufficient for a reasonable jury to find in his favor as to these three elements, and that this claim fails as a matter of law.

In his Seventh claim, Sturdivant alleges race discrimination in violation of § 1981 when in 2007, KONE did not transfer him back from the NEB sector to the SEB sector, his supervisor sent him home without pay one day because of lack of work, and a coworker used the phrase "Okie Dokie Smokie." (Doc. No. 1 at ¶293-307). Here again, the only support for these allegations is found in Sturdivant's complaint. The transfer to another section is not an adverse employment action. The pay scale used by the NEB and SEB departments was the same. (Doc. No. 58-2 at 83). Further, Sturdivant was not demoted or working on a different pay scale; rather, he was working at construction sites installing elevators rather than visiting existing sites for maintenance and repairs. "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (citing Von Gunten v. Maryland, 243 F.3d 858, 868 (4th Cir. 2001)).[2] Additionally, being sent home one day for lack of work without pay does not rise to the level of a materially adverse employment action. Lastly, the alleged comment by a coworker ("Okie Dokie Smokie") is not an adverse employment action. For these reasons, summary judgment will be granted as to Sturdivant's Seventh claim.

In his Eleventh and Twelfth claims, Sturdivant contends KONE discriminated against him on the basis of race when it terminated him in 2007. KONE contends that since such action was already challenged by Sturdivant through the contractual grievance process and he was reinstated pursuant to an arbitration decision, that his termination cannot be viewed as an adverse employment

---

[2] In addition, Sturdivant provides no record evidence indicating the transfer was racially motivated.

action. Sturdivant points out, however, that the Arbitration Agreement states, "This Agreement is without prejudice to either Sturdivant's or KONE's positions with regard to the discrimination claims Sturdivant has filed against KONE with the EEOC." (Doc. No. 60-1 at 2). Therefore, KONE's argument fails.

However, Sturdivant still must present a prima facie case of racial discrimination. Following Sturdivant's termination of employment as an NEB Mechanic in Knoxville, he was reinstated to his same position as an NEB Mechanic at a site in Atlanta. He was awarded full backpay and benefits. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). Furthermore, "'absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the previous position.'" Id. (quoting Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999)). Based on the fact that Sturdivant was reinstated with backpay and benefits and assigned to a location comparable in distance from Charlotte as where he was before his termination, the 2007 termination is not considered an adverse employment action for discrimination purposes. Since he has failed to establish a necessary element of the prima facie case for discrimination, the Court will grant summary judgment as to these discrimination claims.

Sturdivant alleges in claims Seventeen and Eighteen that KONE racially discriminated against him in violation of Title VII and § 1981 when it denied his applications to positions in the Charlotte area and when it "imposed hardship and punishment on Plaintiff in terms of work area and work hours" in 2007, 2008, and 2009. Sturdivant does not offer any specifics as to how KONE

imposed hardship on him in terms of work hours above that which would be expected from his job. Further, the fact that he was not transferred to Charlotte does not rise to the level of materiality required for an adverse employment action. Based on the lack of evidence to support this claim, a reasonable jury could not find that Sturdivant was denied transfer to Charlotte under circumstances that give rise to an inference of racial discrimination, or that he suffered an adverse employment action, and summary judgment will be granted as to these claims.

In his Twenty-First claim, Sturdivant asserts that KONE discriminated against him on the basis of age in violation of the ADEA by transferring him to sites outside the Charlotte area between 2007 and 2009. Although he is a member of a protected group based on his age, he does not provide sufficient evidence to establish a prima facie age discrimination case. He does not provide any evidence that he was performing his job at a satisfactory level. To the contrary, during this time Sturdivant was disciplined for his behavior by his supervisors on at least one occasion (Doc. No. 27-8 at 4). Although an arbitration decision ultimately reinstated Sturdivant in 2007, the reason he was reinstated was because he was not subjected to the appropriate disciplinary procedure; the arbitrator found Sturdivant guilty of insubordination. (Doc. No. 58-4 at 3, 6). Even if Sturdivant could demonstrate satisfactory job performance, he fails to produce any evidence to show that younger employees were in fact assigned to the Charlotte jobs. His allegations alone do not create a prima facie case of age discrimination and fail as a matter of law.

## 2. Mixed-Motive Framework

Under the mixed-motive framework, a plaintiff may prove unlawful discrimination by showing through either direct or circumstantial evidence that his race or age motivated the adverse employment actions. Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003); see also Hill v. Lockheed Martin Logistics Mgmt. Inc., 354 F.3d 277, 285 (4th Cir. 2004). The plaintiff, however,

"need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor." Hill, 354 F.3d at 284. Rather, a plaintiff must only put forth enough evidence "for a reasonable jury to conclude, by a preponderance of the evidence that [the protected trait] was a motivating factor for any employment practice." Desert Palace, 539 U.S. at 101; accord Hill, 354 F.3d at 285.

Here, Sturdivant has failed to produce any direct or circumstantial evidence that would allow a reasonable jury to conclude by a preponderance of the evidence that any alleged adverse employment action was the result of illegal animus. Other than his complaint and affidavit, which provide minimal factual details to support his claims, Sturdivant provides no outside evidence to corroborate his allegations. Therefore, under the mixed-motive framework, Sturdivant's discrimination claims fail as well.

## C.    Disparate Impact Claims

In Sturdivant's Twenty-Sixth, Twenty-Seventh, and Twenty-Eighth claims, he asserts claims of disparate impact based on race in violation of Title VII, § 1981, and the ADEA alleging that KONE's employment decisions had an adverse and disproportionate impact on Black employees and employees over the age of forty. (Doc. No. 1 at ¶682-684). Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but fall more harshly on one group than another." Teamsters v. United States, 431 U.S. 324, 335-36 & n.15 (1977). Sturdivant claims KONE's seniority policy for mechanics, which sets out the hiring, layoff, transfer, and termination procedures, uses "selectively subjective language" and thereby negatively affects Black employees and employees over forty years old. (Doc. 1-1 at 42). However, Sturdivant does not offer any statistical information to support his allegation that KONE's employment policies have had a disparate impact on the protected groups he claims were disadvantaged by the process.

"[I]t is not enough to simply allege that there is a disparate impact . . . or point to a generalized policy that leads to such an impact.  Rather the employee is responsible for isolating and identifying the _specific_ employment practices that are allegedly responsible for any statistical disparities." Smith v. City of Jackson, Mississippi, 544 U.S. 228, 241 (2005) (emphasis in original). Additionally, to sustain a disparate impact claim, the statistical disparities must be sufficiently substantial that they raise such an inference of causation."  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 995 (1988).  Here, Sturdivant has failed to provide any statistical information to support his allegation that the seniority policies for mechanics had a disparate impact on Black employees and older employees and has not even identified any other KONE employee adversely affected by such practices other than himself.  Additionally, Brett Lenig, Sturdivant's helper who was involved in the 2009 physical altercation at a KONE site with Sturdivant and who is white and under the age of forty, was also discharged by KONE under the same employment policies.  Based on the lack of evidentiary support for these claims, summary judgment is granted as to the disparate impact claims.

### D.    Retaliation Claims

In his Eighth, Thirteenth, Fourteenth, Nineteenth, and Twentieth claims, Sturdivant asserts that KONE retaliated against him in violation of Title VII and § 1981 when he complained of work reduction and racial discrimination in the workplace to his supervisors.  To prevail on these claims, Sturdivant must under the McDonnell Douglas framework first establish a prima facie case of retaliation.  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998).  If Sturdivant establishes a prima facie case, the burden then shifts to KONE to articulate a non-retaliatory reason for its actions.  Id.  If KONE meets this burden, then Sturdivant must prove by a preponderance of the evidence that the proffered reason is a pretext for unlawful retaliation. Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001).

### 1. Prima Facie Retaliation

A prima facie case of retaliation under Title VII or § 1981 requires that a plaintiff prove "(1) that [he] engaged in a protected activity; (2) that an adverse employment action was taken against [him]; and (3) that there was a causal connection between the first two elements." Dowe, 145 F.3d at 656. In order to establish a protected activity, a plaintiff must show (1) that he subjectively, "in good faith," believed his employer was violating Title VII, and (2) that the belief was "objectively reasonable in light of the facts." Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003).

### a. Protected Activity

In his Thirteenth, Fourteenth, Nineteenth, and Twentieth claims, Sturdivant alleges that after he complained to a KONE supervisor of racial discrimination, KONE retaliated against him. (Doc. No. 1 at ¶¶ 193, 383-87, 571). Based on the facts, including the charge Sturdivant filed with the EEOC on November 27, 2007, the allegations of discrimination based on race qualify as protected activity.

In his Eighth claim, Sturdivant asserts a retaliation claim in violation of § 1981 in which he alleges that after he complained to a supervisor about a coworker's use of the phrase "Okie Dokie Smokie" and complained to the Union manager about lack of work, KONE retaliated by assigning him to the NEB division in 2007 and not to an SEB assignment in Charlotte. (Doc. No. 1 at ¶¶ 312-18). Complaining about a lack of work, with nothing more, is not protected activity under Title VII. In addition, while Sturdivant may have subjectively believed that his coworker's statement "Okie Dokie Smokie" was a violation of Title VII, such a belief is not objectively reasonable given the mild nature of this discrete comment. See Peters, 327 F.3d at 321; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (stating that Title VII is not a "general civility code for the

American workplace"). Sturdivant has failed to show that he engaged in statutorily protected activity as to his Eighth claim, and the Court will thus enter summary judgment on this claim.

**b. Adverse Employment Action**

To establish a prima facie retaliation claim, Sturdivant must next show that he suffered an adverse employment action. Unlike the substantive provision of Title VII, the antiretaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 64 (2006) (holding that substantive and antiretaliation provisions of Title VII are not coterminous). Rather, in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotations omitted) (noting that this objective material adversity standard separates trivial harms from significant harms). Such a standard depends on the context of a particular case, but "does not require a reviewing court or jury to consider the nature of the discrimination that led to the filing of the charge." Id. at 69, 71 (internal quotation omitted) (emphasis in original).

In his Thirteenth and Fourteenth claims, Sturdivant alleges that KONE retaliated against him by terminating him in 2007.[3] (Doc. No. 1-1 at ¶¶ 385-87). KONE admits to having terminated Sturdivant in 2007, and the termination constitutes an adverse employment action.[4]

---

[3] Sturdivant was reinstated per an arbitration agreement on September 2, 2008. (Doc. No. 58-4 at 2-8).

[4] KONE argues that because it reinstated Sturdivant per the arbitration agreement, the termination was not an adverse employment action. However, the agreement specifically stated that it was entered without prejudice to Sturdivant's claims against KONE in relation to the charge he had filed with the EEOC. Further, Burlington Northern held under similar facts that suspension without pay, followed by later reinstatement with back pay, did not preclude a jury finding of an adverse employment action. See Burlington Northern, 548 U.S. at 70-71.

In his Nineteenth and Twentieth claims, Sturdivant contends that KONE acted in retaliation to his racial discrimination complaints by failing to restore his terms and conditions of employment pursuant to the arbitration order,"impos[ing] hardship and punishment on Plaintiff in terms of work area and work hours," and refusing to consider him for a Charlotte-area job. (Doc. No. 1-1 at ¶¶ 568-80). Some of Sturdivant's allegations, such as KONE's alleged refusal to assign him to a job near his home city, would not deter a reasonable employee from making a charge of discrimination. However, Sturdivant's allegation that KONE failed to restore him to his previous terms and conditions of employment after he was reinstated as an employee, as well as the allegation that KONE imposed longer-than-normal work hours on him, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. The problem, however, is that Sturdivant provides no evidence to corroborate his allegations of working longer hours or that his position post-reinstatement was materially different from or more difficult than his previous one.[5] The Court finds that Sturdivant has provided inadequate evidence of an adverse employment action regarding claims Nineteen and Twenty.

### c. Causation

Finally, to establish a causal connection, Sturdivant must show that his protected activity caused KONE to take an adverse action against him. See id. at 64, 68. Although temporal proximity may be sufficient to establish a prima facie case of retaliation, it is, by itself, insufficient evidence to escape summary judgment. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993); Smith v. R.J. Reynolds Tobacco Co., No. 1:02cv63, 2003 WL 355646, at *5 (M.D.N.C. Feb. 11, 2003);

---

[5] Sturdivant was terminated from a position in the NEB division in Nashville, TN, and reinstated to an equivalent position in the NEB division in Atlanta, GA. Sturdivant allegedly requested that the position on reinstatement be in Charlotte, NC, near his home. However, both Nashville and Atlanta are comparable in their relative distances from Charlotte, and the Court fails to find evidence of an adverse action in the Atlanta placement.

Martin v. Nationwide Mut. Ins. Co., No. 1:99cv956, 2001 WL 604192, at *9 (M.D.N.C. Apr. 20, 2001).

In his Thirteenth and Fourteenth claims, Sturdivant alleges that after his complaints about race and age discrimination to KONE supervisors in July 2005, March 2007, and August 2007, KONE retaliated by terminating Sturdivant in September 2007. Although there is evidence of temporal proximity between the August 2007 complaints of racial discrimination and Sturdivant's September 2007 termination, such evidence is the only evidence offered by Sturdivant to establish the causation element. Further, even assuming Sturdivant could prove a prima facie case as to these claims, KONE provided a non-retaliatory reason for the termination by offering evidence that the September 2007 termination was a result of Sturdivant's insubordinate behavior in the workplace. (Doc. No. 58-4 at 4-8). Sturdivant has failed to provide evidence that this legitimate reason for his termination is pretext for unlawful retaliation, and the Court will thus grant summary judgment on claims Thirteen and Fourteen.

**E.    Wrongful Termination Claims**

In his Tenth and Twenty-Second claims, Sturdivant asserts that he was wrongfully terminated by KONE in 2007 and 2009 in violation of North Carolina public policy "to protect and safeguard the right and opportunity of all individuals to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap . . ." N.C. Gen. Stat. § 143-422.2 (2009). He contends that his 2007 and 2009 terminations were racially motivated and retaliatory in nature.

"Wrongful termination may be asserted only in the context of employees at will, and not by an employee . . . subject to discharge only for just cause." Trexler v. Norfolk S. R. Co., 550 S.E.2d 540, 543 (N.C. App. 2001) (quoting Houpe v. City of Statesville, 497 S.E.2d 82, 88 (N.C. App.

1998) (internal quotations omitted)). "Employees terminated under a contract or collective bargaining agreement who can be terminated only for 'just cause' must file suit for breach of contract, rather than pursue a tort action based on wrongful termination." Burch v. Philip Morris USA, Inc., 296 F. Supp. 2d 646, 650 (M.D.N.C. 2004).

Sturdivant and KONE agree that Sturdivant was not an employee at will, but rather was a "just cause" employee pursuant to a Collective Bargaining Agreement. (Doc. No. 1 at ¶ 23; Doc. No. 58 at 12). Therefore, the wrongful termination claims fail as a matter of law and summary judgment will be granted as to Sturdivant's Tenth and Twenty-Second claims.

### F. Intentional and Negligent Infliction of Emotional Distress Claims

In his Sixth, Ninth, Fifteenth, and Twenty-Third Claims, Sturdivant asserts claims for intentional infliction of emotional distress ("IIED"), and in the alternative, claims for negligent infliction of emotional distress arising out of all alleged adverse employment actions and the events leading up until these actions. He further alleges that KONE intentionally discriminated against him on the basis of race, causing him to suffer emotional distress. The only claim for which Sturdivant offers corroborative evidence is the claim arising out of his 2009 termination.

To prevail on a claim for IIED under North Carolina law, the plaintiff must allege that the defendant engaged in extreme and outrageous conduct, that the conduct intended to cause severe emotional distress, and that the conduct did in fact cause severe emotional distress. Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992). The Court will determine whether the alleged conduct is sufficiently "extreme and outrageous" as a matter of law. Id. Such conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behavioral Health Sys., 595 S.E.2d 778, 782 (N.C. Ct. App. 2004). "The term 'severe emotional distress' means any emotional

or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obsterics, 395 S.E.2d 85, 97 (N.C. 1990).

Sturdivant alleges that KONE intentionally harassed him and created a hostile work environment that inflicted upon him severe emotional distress. He further alleges that his 2009 termination caused him severe emotional distress. "North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim," and a termination "allegedly in violation of Federal lawn alone, does not constitute extreme and outrageous conduct" sufficient to sustain an IIED claim. Jackson v. Blue Dolphin Commc'ns of N.C., 226 F. Supp. 2d 785, 793-94 (W.D.N.C. 2002). Further, Sturdivant does not identify any specific discriminatory acts which caused him such emotional distress. The statements Sturdivant alleges were made by KONE employees regarding race and ethnicity, though inappropriate, do not rise to the level of extreme and outrageous conduct necessary to sustain an IIED claim.

Furthermore, Sturdivant offers no evidence that he has incurred any type of severe emotional distress apart from contending in his Complaint that he had been hospitalized for chest pains and sporadic stress and continues to suffer from "mental anxiety." (Doc. No. 1 at ¶405, 634). Sturdivant has not produced medical receipts, records, or testimony to corroborate his contention that he has suffered serious emotional distress. He also does not provide evidence of a causal connection between these alleged medical ailments and any conduct on the part of KONE or its employees. Sturdivant fails to provide evidence from which a reasonable jury could find in his favor, and KONE is thus entitled to summary judgment on the IIED claims.

In the alternative, Sturdivant asserts claims of negligent infliction of emotional distress. To sustain such a claim, Sturdivant must provide sufficient evidence that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A., 395 S.E.2d 85, 97 (N.C. 1990). The showing of emotional distress must be severe; "mere temporary fright, disappointment or regret will not suffice." Id. Further, there must be a showing that such distress was a "proximate and foreseeable result of the defendant's negligence." Id. Sturdivant does not identify any specific incident where Kone negligently acted in a manner from which it is reasonably foreseeable that their conduct would cause Sturdivant severe emotional distress. Further, he provides insufficient evidence of actionable emotional distress. As a result, the Court will enter summary judgment in favor of KONE on claims Six, Nine, Fifteen, and Twenty-Three.

## G. Defamation Claims

Sturdivant alleges KONE made defamatory statements about him in which they accused him of violating company policy as grounds for his termination. To sustain a claim of defamation under North Carolina law, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Smith-Price v. Charter Behavioral Health Sys., 595 S.E.2d 778, 783 (N.C. Ct. App. 2004) (quoting Tyson v. L'eggs Prods., Inc., 351 S.E.2d 834, 840 (N.C. Ct. App. 1987)). North Carolina recognizes two types of defamation: defamation per se and defamation per quod. Donovan v. Fiumara, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994). To prevail on a claim of defamation per se, a plaintiff must prove that: "(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood

or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." Friel v. Angell Care, Inc., 440 S.E.2d 111, 113-14 (N.C. Ct. App. 1994). If a plaintiff proves defamation per se, the law presumes malice and damages. Donovan, 442 S.E.2d at 574. In the alternative, defamation per quod is available "[w]hen the defamatory character of words does not appear on their face, but only in connection with extrinsic, explanatory facts . . . ." Eli Research, Inc. v. United Commc'ns. Group, LLC, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (citing Badame v. Lampke, 89 S.E.2d 466, 467-68 (N.C. 1955)). A plaintiff asserting defamation per quod must prove special damages in addition to proving the elements of defamation per se. Id. (citing Badame, 89 S.E.2d at 468). "To prove special damages from defamation, a plaintiff's allegations must evidence a pecuniary loss rather than simple humiliation." Moore v. Cox, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004) (citing Johnson v. Bollinger, 356 S.E.2d 378, 384-85 (N.C. 1987)).

Sturdivant alleges KONE managers Vincent Schiavone, Sam Bono, Dan Nitz, and Alex Taveras made defamatory statements about him when they accused Sturdivant of violating company policies. Sturdivant does not describe the alleged defamatory statements in further detail, and he fails to provide evidence other than his own pleadings and deposition testimony to corroborate his defamation allegations. Sturdivant does not provide a single affidavit or deposition from a third party to support his defamation claims, all of which have been denied by KONE. "There is little difference between a plaintiff's complaint and a plaintiff's deposition testimony that merely reiterates the complaint." Collins v. TIAA-CREF, No. 3:06cv304, 2009 WL 3077555, at *10 (W.D.N.C. Sept. 23, 2009 ) (citing Medina v. Spotnail, Inc., 591 F. Supp. 19,0 197 (C.D. Ill. 1984)). Sturdivant's conclusory allegations, without more, fail to provide evidence from which a reasonable jury could find from a preponderance of the evidence that KONE is liable for defamation.

See Southprint, Inc. v. H3, Inc., 208 Fed. App'x 249, 255 (4th Cir. 2006) (holding defamation claim resting solely on basis of plaintiff's pleading did not present specific facts showing that there is a genuine issue for trial") (citation omitted).  The Court will grant summary judgment as to Sturdivant's Sixteenth claim.

###    H.    Hostile Work Environment Claims

In his Twenty-Fourth and Twenty-Fifth claims, Sturdivant alleges that KONE subjected him to a racially hostile work environment in violation of Title VII and § 1981.  To survive summary judgment, Sturdivant must present sufficient evidence from which a reasonable jury can find that Sturdivant's harassment was "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere."  Gilliam v. S.C. Dep't. of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007) (quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001)).  Sturdivant must also show that the claim is imputable to KONE.  See E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008).

In the case at hand, Sturdivant contends KONE knew that certain employees harassed him based on his race and that it created a hostile work environment by promoting some of those individuals, failing to promote Sturdivant, and retaliating against Sturdivant after he complained of such harassment.  In his deposition, Sturdivant described three incidents involving KONE employees that he believed were racially motivated and created a hostile work environment.  The first incident occurred when Sturdivant and his helper got in a verbal disagreement during which the helper told Sturdivant that "he would do something to [his] b-l-a-c-k-a-s-s."  (Doc. No. 58-2 at 9).  In March 2007, Sturdivant contends that another mechanic responded to a question with the phrase, "Okie Dokie Smokie," which Sturdivant believes is a racist comment.  (Doc. No. 58-2 at 11).  Sturdivant also claims that in the final months of his employment, his helper Lenig made a comment

about the White House being painted black after President Obama was inaugurated. (Doc. No. 58-2 at 14).

Sturdivant contends that such comments were unwelcome and racially motivated. The "severe or pervasive" element consists of both subjective and objective components. Sunbelt, 521 F.3d at 315. Sturdivant must show that he subjectively found the work environment at KONE to be hostile or abusive, and that a reasonable person in his position would have also found the environment to be objectively abusive. Id.; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998). A prima facie claim requires that "the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" Sunbelt, 521 F.3d at 315 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" Id.

Although these comments are inappropriate and racially insensitive, they do not rise to the "severe and pervasive" level required for a prima facie hostile work environment claim. Three isolated incidents over the course of a nearly six-year term of employment with KONE do not amount to extreme conduct sufficient to have altered the terms and conditions of Sturdivant's employment. Further, apart from his own allegations, Sturdivant offers no evidence to corroborate that these statements were ever made. Sturdivant has presented insufficient evidence from which a reasonable jury can find that a reasonable person in the plaintiff's position would have found the working environment to be hostile or abusive. For these reasons, Sturdivant's Twenty-Fourth and Twenty-Fifth claims fail as a matter of law.

## VI. CONCLUSION

**IT IS, THEREFORE, ORDERED** that KONE's Motion for Summary Judgment (Doc. No. 57) is **GRANTED.**

**SO ORDERED.**

Signed: July 7, 2010

Robert J. Conrad, Jr.
Chief United States District Judge